Thank you, Judge Diaz. May it please the court, Eric Brignac for Irving Bennerman. And as this court's aware, we're up here making two arguments. First, that the law of the case doctrine does not apply and the district court erred in not reaching the merits of our contention that Mr. Bennerman no longer has three ACCA predicates. And then the substantive question, if this court reaches it, that Mr. Bennerman does not, in fact, have three ACCA predicates. And the law has changed a fair amount since we briefed this case. And I believe that one of the ways in which the law has changed- Mr. Brignac, don't we also have the issue of whether or not the motion is time barred or could be time barred? Mr. Brignac Well, in your honor, I think that's where that is another procedural hurdle. Also, just for the court's awareness, I don't know if my clock's ticking down, but- Judge Brignac Madam Clerk, this apparently- Mr. Brignac I mean, I can spend all day up here. Judge Brignac We're going to time you one way or the other, but I didn't do that. Mr. Brignac I know everyone wants to get home on the last day. Judge Sotomayor You can't have any idea how much we appreciate you raising that. Mr. Brignac Thank you, your honor. So I guess maybe your procedural- Judge Sotomayor No, I don't mean to get you out of order. Mr. Brignac Well, right. And I think we will certainly address all of them. So the Hodge case indicates that the only predicates that can be used to keep Mr. Venderman enhanced are predicates that were identified in the PSR. And there were four of them. Connecticut first degree robbery, Connecticut second degree robbery, North Carolina discharging into an occupied building after Johnson 2 is no longer a predicate. I will concede that the Connecticut assault, the particular provision under which he was convicted, does qualify as a predicate. So that then leaves- Judge Brignac Well, let me ask you, with respect to the discharging into occupied property, does that issue preserve that contention that it's not an adequate predicate? Mr. Brignac And that, your honor, I think gets to the issue. The district court found he was an armed career criminal. And there were four predicates listed in the PSR. And we don't know whether the district court in that case relied on the force or residual clause. But I will say it had to rely on the residual clause because none of the other ACCA clauses can apply to that. There's no indication this court's Peral Dominguez decision makes clear, no indication that that requires any sort of use of force against a person. So there is one of the four predicates that the district court relied on. Johnson, too, by getting rid of the residual clause, was a change in applicable law by the Supreme Court, which then lets us get into court. So I think- and then this court's Winston case said we didn't need to make a specific objection under the residual clause at that time that would have been frivolous and would have been foreclosed. Judge Brignac No, but, I mean, you do have to identify the particular predicates that you're objecting to. Judge Brignac Well, and, Your Honor, in our 2255 motion, we object to, and that's at Joint Appendix 38, we challenge all three degrees of Connecticut robbery because, again, before Hodge, third degree could have come back in. So we challenged all three degrees of Connecticut robbery, Connecticut second degree assault, and North Carolina discharging a weapon. And that's at Joint Appendix 38. So we do, in our 2255 motion, challenge all of those. And just so Your Honors are aware, the way these sort of work procedurally, Mr. Benerman filed his motion. Our office then was appointed, and then I think it was maybe technically in reply to the government's response, but we sort of provided the, upon appointment, substantive argument. And all of those arguments were before the district court, before it made its decision. So I do think all four predicates were adequately challenged in our 2255. And the law of the case doctrine, in some ways I don't think, after Hodge, this panel needs to reach that because if you look at what Benerman won, what we attacked in Benerman won, it was only Connecticut first degree robbery. So even assuming that Connecticut first degree robbery with its aggravators is a predicate that still only gets us to two, the second degree assault and the first degree robbery. So this court does need to address on its face the merits of whether Connecticut's second degree robbery is a violent felony. And of course, the government, I think, what's going to dominate this argument, the Stokeling case has come out. And I want to confront Stokeling head on because I do not think that it is nearly as much of an impediment to relief as the government thinks it is. This court had come out already in Gardner and Winston. And it applied Johnson 1. And in Johnson 1, the Supreme Court held that force doesn't mean all force. It means violent force. And this court, applying Johnson 1, resolved Gardner and Winston. Then Stokeling came out. But before Stokeling came out, which held that the degree of resistance in Florida robbery met the force clause, this court had already gone there and done that. This court in Orr, applying Winston, applying Gardner, said no, Florida robbery still counts. And the reason is, even though every state uses this term, robbery, you have to actually look at what the crime holds. And this court in Hammond looked at New York robbery and said, no, New York robbery, it's more than purse robbery, requires some level of active resistance, sort of active resistance that the Supreme Court said requires the use of force in Stokeling. Nothing about that disturbs this court's holdings in Gardner and Winston about North Carolina and Virginia common law robbery, respectively, that just because there's some use of force, some de minimis use of force, it does not go to that level. So the real question here is, what does the Connecticut statute say? And more importantly, more critically, how did the Connecticut courts interpret that? The Connecticut statute, as this court's aware, does use the term resistance. And I will admit that if we just had the plain language of that statute, post-Gardner, post-Orr, post-Hammond, post-Stokeling, I probably wouldn't be up here. This would have been a per curiam affirmance. But we do have the Connecticut Supreme Court. And the Connecticut Supreme Court, in Wright, really took a look at this statute and had to look at Connecticut robbery categorically because it was procedurally a very strange but interesting posture. The defendant there was attacking Connecticut robbery under an equal protection. I think the court also looked at due process theory, saying, this is unfair. You're punishing robbery less serious than larceny from the person, purse snatching. And that makes no sense because obviously robbery is a more serious crime. And the Connecticut court said, well, look. Look at the structure of what we did. We've divided robbery into multiple degrees. And when you get to these real aggravated robberies, that can be your first degree. That can be your second degree. The level of force required in our robbery statute categorically can be nothing more than the threat of a pinch. And that it can be less offensive than that is what is required for purse snatching, which everyone agrees is not an act of predicate. The Second Circuit in Shabbat was, Your Honor. Was Wright actually applying the robbery statute in that case? So, Your Honor, it was not applying it, I think, in the way you're asking in the traditional sense of a defendant was convicted and was a suspicion of offense. It was sort of looking at it in the context of a different offense where the second degree of larceny was, why it was a second degree of larceny was being classified as a higher level offense than simple robbery. So I don't know that it's all that illuminating. Well, and Your Honor, I would respectfully disagree, I think, on the sense it could be more illuminating because unlike what this court normally has to do, which is look at a state supreme court applying a particular set of facts and do some extrapolation to try and divine a categorical rule, here because the court was asked to look at larceny and robbery categorically, in some ways it already did this court's work for it. So it was a more pure analysis of state law. The Second Circuit, I would say, Your Honors, even though at the end of the day in Shabbat, which I think both of us cited in our 28Js, would disagree. And if this court comes out the way I believe it should, it would definitely create a circuit split, but you'll be on the edge. Because the Second Circuit in Shabazz, which is obviously very familiar with Connecticut robbery, describes the offense as saying, notwithstanding a robber's actual use of minimal force that would not itself cause pain or injury. So it's describing force, I think, the exact way we described it in our briefs, the way the Connecticut Supreme Court's described it in Wright and Crump. Minimal force, Johnson 1 force, not this extra level of resistance force. Then where I think the Second Circuit, respectfully to them, just gets it wrong, it says, nonetheless this is an act of predicate because it inherently carries an implicit threat of escalation. And that to me, that implicit threat, that's the residual clause. When Congress drafted this law many years ago, it did want to capture offenses, I would submit, like Connecticut robbery, this implicit threat of escalation. And it did that with the residual clause. And we won't go into the history of it, but it turned out that that clause was so hard to interpret, it was struck down. So you had ACCA. It was sort of a three-legged stool, and the residual clause was bearing a lot of weight. And then the Supreme Court cut that leg out. And what I think the Second Circuit is saying, man, this stool does not work anymore. And people that we think need to get this 15-year-to-life sentence aren't getting it. So we're going to try and put that leg back. Well, is there any argument that the robbery statute is divisible? And if so, then what? So Your Honor, I do believe that the second-degree robbery and the first-degree robbery statutes are divisible based on the aggravators. The third degree, so the basic robbery, that core robbery. And were you asking about second-degree or the sort of core robbery? The core robbery definition. So I looked up the Connecticut jury instructions, and I do believe it could be divisible because the way the Connecticut jury instructions read is you have that division between either compels someone to give up their property or the resistance standard. And it could be divided in as much as district courts are instructed to use the appropriate one of those. Now, I would submit, Your Honor, that it ultimately fails the divisibility test because I think under either prong, neither of those is enough. But I do think, Your Honor, if this court were to find that one of those two prongs satisfies, then I do think that the courts treat them separately enough that we could go back and look at Shepard documents. And honestly, Your Honor, though, from what I've seen from the documents in this case, which isn't much, that I don't know if we could determine. And the same thing goes with the second-degree robbery conviction. I think we noted it's in the PSR. To the extent this court believes that some of the second-degree robbery aggravators are predicates. And Your Honors, I honestly don't think I could dispute that. We know at least one of the second-degree robbery aggravators isn't a predicate because it's simply that another person be present. So, you know, if my robbery is categorically, if my taking $300 out of the cash register and that State v. Crump, again, very similar. In fact, I would say less serious than the fact situation in Virginia in Winston where a clerk was pushed out of the way and made to fall down. State v. Crump is another Connecticut case, Your Honor. Someone told the cashier to open the register, pushed the cashier out of the way, grabbed $300, went out. No active resistance by the cashier in that case. And I think if we look at Stoeckling, so what's this distinction? Why does Gardner come out one way? Why does Hammond come out another? And Stoeckling says, as it's going through, as it's describing kind of what do we mean by the level of resistance necessary to push this into a predicate, it says it's robbery that must overpower a victim's will because it necessarily involves a physical confrontation and struggle. And that's at page 553 of Stoeckling. And so that's what I think we don't have here. We have some use of force required. And again, Stoeckling didn't overrule Johnson 1. So we know it's not just any force. So when does that resistance tip us over? When does it become enough resistance? And the Supreme Court- Isn't that a threat? I mean, you're just telling me to use a force. It's also the threat of force, right? Connecticut also has a compel someone to give up property. And again, that could be, I think, the right case talks about the threat of a pinch, the threat of a slap, which I would say doesn't rise to the level of the threat of enough force, Your Honor. But it could be, yes. And I think that's clear. If you threaten force, if you use force, if you attempt force, any of those, if a statute categorically gives you that, then it's a predicate. And where we're saying this doesn't count isn't that it's not a use, attempt, or threat, but that that term force is defined by Johnson 1, not overruled by Stoeckling, applied by this court in Gardner and Winston. That force isn't ACCA-level force, isn't violent force, isn't you go to jail for 15 years to life-level force. And so why does a crime like this, why does a robbery offense not count? And I would say that's because the residual clause isn't here. But that's a legislative fix, Your Honor. And I would ask this court not to do like the Second Circuit has done and attempt to judicially recreate the residual clause by taking a de minimis force statute like this and just saying, well, it's enough force for us. That's not what you need to do. What you need to do is apply the law as written, say that he is not an armed career criminal, and I think we would all appreciate at some point Congress getting in to replace that leg on the stool. And I'm sure my colleague and I would disagree as to what law we would like written, but in any event, it's not up to this panel to rewrite this law. You don't think under Wright, the threat of a pinch, a scratch, or a slap would satisfy Stoeckling if applied to overcome a victim's resistance? And Your Honor, I would say that that is a close call. I would say the threat of a pinch isn't enough, and I do think there's some tension with the Castleman case. I mean, how do we gauge that? I guess I'm in trouble. And I think that the Connecticut Supreme Court went on in that saying and said, OK, how do we gauge what that could do? They said, well, look, this could be, and it's a great example they use for our federal purposes, this could be even less offensive than a purse snatching. And that is sort of the example that everyone uses to say, OK, we know what kind of theft from the person doesn't count as purse snatching. In fact, this court has looked at the fact that states have, like in New York and Hammond, has sort of a separate purse snatching statute to say a robbery must cover something different. But structurally, the Connecticut legislature decided that basic, third degree, simplest form robbery, although it's not really, as I remember, it really says the legislature could reasonably have concluded that this is less offensive, whatever that word means, than purse snatching. That's not actually saying that it is or it would be. This is just saying, like, there's a rational basis for coming to that conclusion. It might not be what I think. It might not be demanded under law. But because that's a context where they're looking at a sort of equal protection, due process challenge, it seems quite different to me. And Your Honor, I would say the reason it isn't different is that if you or I or anyone other than the Connecticut Supreme Court were to be applying a rational basis test to see what this legislature might have meant, then that would simply be, we're not saying it is. The Connecticut legislature says it could have meant that. But this is the one entity that has the final say on the meaning of that statute. And I don't think that the Connecticut Supreme Court would find the Connecticut legislature's decision there rational unless it felt that was a fair reading of the law and the correct reading of the law. Thank you, Mr. Brickneck. Thank you, Judge Diaz. Ms. Rung, where are you? May it please the Court, Anu Rungarajan on behalf of the United States. Your Honors, nothing has changed in the law since 2014 in this Court's decision that the Connecticut First Degree Robbery is a crime of violence under the Elements Clause of 924E. That decision rested on the generic definition of robbery that said the use or threatened use of force. Since then, if anything, this Court's decision in 2014 has been confirmed by the Second Circuit's decision in Bordeaux and the Second Circuit's decision in Chavez in 2019, as well as Stokely. My colleague spends a lot of time focusing in on Stokely and the degree of force, but Stokely, the Supreme Court made very clear that it was not looking at the degree of force. It said, however slight. There was no distinctions between gradations of violence. It was all about overcoming a victim's resistance per se. Johnson, thus, does not require any particular degree or likelihood or probability that force will cause physical pain or injury, only the potential. Stokely, Chavez, Bordeaux counsels that the Court's decision in 2014, which relied on the generic robbery definition 53A33-133 makes that a crime of violence applies with equal force to first degree, which has the aggravated elements, and second degree. What counsel is really asking this Court to do is to direct the lower court to impose an unlawful sentence. Counsel wants you to ignore three predicate offenses, third degree, second degree, and first degree robberies. As this Court knows, ACRA requires a district court to impose a 15-year mandatory minimum if a defendant has three predicates. This Court has said over and over in cases that that is not discretionary. A district court must do it. In this case, if there are three qualifying predicates, which based on the Court's reasoning in 2014, there are, the defendant was properly classified as an ACRA defendant and properly received the enhancement. The enhancement applies regardless of whether the government seeks it. It is statutorily mandated. It is based on that individual defendant's history. Well, does Stokely overrule Winston and Gardner? Your Honor, the Court in Winston and Gardner didn't have the benefit of Stokely, and the answer would be yes, because in Winston and Gardner, the Court specifically looked in Gardner at the North Carolina common law robbery, and it looked at how the North Carolina Supreme Court defined, explained that level of force, and it said, it quoted the North Carolina Supreme Court saying, although force implies personal violence, degree of force is immaterial so long as it is sufficient to compel the victim to part with the property. It found that that was insufficient under Johnson. Well, under Stokely, that is now sufficient. In Winston, the Fourth Circuit had said, this Court had said... Do you interpret Stokely, I think this is what Judge Floyd's question is, Stokely talks about overcoming resistance, and that is talking about compelling someone to act. Is there a distinction for you between those? I mean, that's the gray area between those, right? Stokely, if it is overcoming resistance, Stokely says, all good, right? The question is, is that the equivalent of compelling someone to act? Yes, because if you're going to use force in order to basically commit the larceny, you're going to have to take it from them. You are basically forcing them to give it to you against their will. So it is overcoming resistance just in a different way of defining, as opposed to... But it needs to overcome physical resistance, so how does that work in that context? In terms of compelling somebody to give you something? Yeah, right. If you just order someone to give you something. Well, if you're using... If there is a weapon involved, first degree, then it's using it with the threat of force, and so you're compelling them to give it to you. So in that circumstance, it is pretty clear that it would be by use of force, you're compelling them to turn it over to you, and overcoming any resistance they have. If it is a verbal threat, I think that if you are threatening somebody with harm, and they don't know whether or not you are... If you have a weapon, again, you're compelling somebody... I don't want... They don't want to give up their property voluntarily, so you are overcoming whatever resistance they have by compelling them through your force violence and threats of violence to give it over. So I think it does fit within Stokeling. It is just another way of overcoming resistance. And so I think applying Stokeling... If the court were to decide the Gardner and Stokeling cases today, the result would be different. Going back to the point a second ago, Matt, I'm trying to just understand where that line is. So I take it your position would be if you paid somebody money, we wouldn't naturally view that as being compelling them to part with their property. We're just paying them for their stuff. Right? In exchange. Right. And so I take it it really turns on the interpretation of what the word compel means. And we look at Connecticut, and maybe it's a pinch, but at least Connecticut is suggesting to us that compelling requires this threat of some type of physical act. With respect to the Connecticut statute, it requires the use... The use of force or threat of use of force is laid on top of compelling the person to give it up. So within that statute, I mean, it's broken up. And let me read it so I'm correct. It says, a person commits robbery when in the course of committing the larceny he uses or threatens the immediate use of physical force upon another for the purpose of, one, preventing or overcoming resistance, or two, compelling the owner of such property to deliver up that property. So you have to have the use of force... Use of force plus compel. Plus compel. That's what gets us out of something other than a use of force to compel. Right. And so there, the compelling is really not a whole lot different than overcoming resistance. Yes, sir. And that's what this court anchored its 2014 decision in this case on, was the modifier, the use or threatened use of immediate... The use or threatened immediate use of physical force upon another. And concluding that first-degree robbery was a act of predicate. And in this particular case, I know that... Can you talk for a second, just... Just Diaz raised the question at the beginning, and we didn't get to it with your colleague, about timeliness and why we should or should not, I guess, in your view, view this Johnson 2 case as the triggering incident. So, a couple of different views. Your Honor, the government's position in the brief has been that the law of the case applied and that there was a procedural part. Right. And I first am reminded of my counsel saying that the arguments were actually raised with respect to the discharge of a weapon and the assault. They were not. In terms of the procedural posture of the case, in the 2255 application, the only issues that were raised were the first-degree, second-degree, and third-degree robberies. But not in the FPD's brief. In the FPD's... There wasn't a brief. It was originally... The FPD filed the standard paperwork. So, it was an opening 2255 submission. It just lists first-degree, second-degree, third-degree. I get you. Based on law of the case at that time. And so, when he cited to us... And I didn't check this. I'm glad you raised this. When he cited to us JA 38, that's not the... That's the opposition to the motion to dismiss. You're saying that's the first time that he's raising those issues. He didn't raise it in the petition. He didn't raise it in anything other than the response to the this North Carolina issue. That is correct. But also, the defendant had the ability... When Johnson... None of the defendant's arguments with respect to any of his predicates are based on Johnson 2. All of his predicates were based on force clause. The Connecticut robberies, force clause. That's this court held in 2014. It's a force clause. The second-degree assault, force clause. The discharge of a weapon into an occupied building, that was not fleshed out. But the others were fleshed out. It was force clause. Those were... He was... Based on Johnson 1, he had the ability to challenge the level of force as soon as this court made its ruling. He did in front of the district court, and then in 2014. But take the hypothetical, and I'll call it a hypothetical. It may actually be this case. But let's call it a hypothetical, where the court in 2014 decides first degree, but doesn't decide third degree, even though the rationale would explain third degree. It doesn't actually decide. It just decides first degree. He then comes in much later, says, well, they didn't make clear that third degree, whether it was decided under the force clause or the residual clause, we don't know for certain. And so I'm going to sort of assume it was residual clause, and therefore use the time provision of Johnson 2, even though obviously all of the arguments here are about Johnson 1. Why wouldn't that get him over the threshold of timeliness, even though really, in reality, nobody here is talking about Johnson 2 one bit? The government sees the court's concern. And to a certain degree, we understand it had gone straight to the merits. Because the case has been evolving and changing, and there is a change in dialogue. When Johnson 1 came out, the residual clause was still valid. And then there was a change in the discussion on the amount of force. And so there is a development in the case law. Because the question there is, pre-Johnson 2, would it be reasonable? I know this isn't a test, but just intellectually, would it be reasonable for the defendant to challenge his third degree robbery conviction after Johnson 1? Because he knows the residual clause has got him hook, line, and sinker, and so there's no reason for him to file at that time. There's not really a reason to file until the residual clause goes away. And that focuses him on the one issue, that being the force clause, even though that's really a question that was Johnson 1, not Johnson 2. It would be helpful if they had used different defendant names. A couple of different things. In terms of notice, everyone is on notice when the PSR comes out as to what convictions might be used for the court to make its decision regarding predicate offenses for purposes of ACCA. When this came out, there were a series of offenses, first degree, second degree, and third degree. The defendant did, in fact, argue that first degree robbery had the ability to argue that first degree, second degree, and third degree were not violent felonies under Johnson 1. Did not raise that specific claim. We went forward, argued it. This court found that they were violent felonies under the force clause. Johnson 2 comes out in 2015. Defendant argues that the decisions were based on the residual clause. It was not. And we know that based on looking at the 2014 decision. And so it doesn't fit this particular case scenario. Would the government have taken a different position in its motion to dismiss had it been a completely new claim anchored on Johnson 2? Yes, because Johnson 2 is retroactive. So if you can see there's a change in the law, then why does the law of the case apply? There wasn't a change in the law with respect to whether or not predicate robbery falls within the force clause of 924E. So I don't concede that there was a change in law with respect to that. What I will acknowledge is the Supreme Court's decision in Johnson 2, striking the residual clause, that decision had no bearing on this court's 2014 ruling that Connecticut robbery falls within the force clause. But it made that argument obviously much more relevant because as Judge Richardson has pointed out, the defendant could argue the force clause to the cows came home but the residual clause was still there dangling over his head. Agreed, Your Honor. And that is why in this particular case... But he didn't. The problem with that is in 2014 when that issue was before us, he didn't. He argued force clause. And y'all argued force clause. Y'all. I don't mean you personally. I just mean y'all. The United States argued force clause. Everybody argued force clause in 2014 because nobody at that point was relying on the residual clause to support these being active predicates. That's right. And I'm a trial lawyer. And so by practicality, Your Honor, I understand that while there may be procedural bars that should be applied, the court is also very concerned with the accuracy, integrity of the judicial process here. And in this particular case, even if you went to the marriage, the defendant has three or more predicates that qualify him as an active defendant. So in terms of the judicial integrity of the process, it has been met here. What the defense would like you to do is say, now that this court has, while the case applies, Connecticut robberies are all violent felonies, layer Hodge on top and don't let the government rely on the third degree robbery here for purposes of an active predicate or any of the other predicates. So if we were to send the case back, it's not necessary for us to reach the question of whether or not he has three violent felonies. I mean, the district court can do that, right? The government would submit that that is the problem. This court in the first instance can go ahead and take care of it because it's a legal issue and can affirm based on this 2014 decision and law of the case. But if the court is inclined to have the district court consider it, the government would argue that it should be open for resentencing and that the government be able to argue every predicate offense to the court because at the end of the day, the district court must impose the 15-year mandatory minimum if there are three predicates. It doesn't have an option. So we should ignore Hodge? Is that what you're saying? Yeah, I was going to ask that. I think Hodge is quite surprising because taken to its logical extension, that's what it authorizes. It mandates the court to put it in place. Well, but we're a panel, right? This is the law of the circuit. So what would you do with Hodge? I would suggest to the court that it can be distinguished and limited to its specific facts. In this particular case, the pre-sentence report noticed that the defendant generally in the draft that all of the – the defendant was an armed career criminal without specifying. It went on in the addendum when the defendant challenged one of those to list four predicates. And those four predicates were the first-degree robbery, the discharge of a weapon, the second-degree robbery. And then if the court had concerns with the first-degree robbery, it mentioned the second-degree assault. So the government would submit that if the court finds that the second and third – the first and second-degree robbery qualifies predicates, in light of its decision in Peral, the discharge of a weapon, that's an open question. But the court relied on that. The government relied on that in taking its position that it did. So in terms of notice issues, the government didn't have notice that there would be – there's a change in law, so we should have the opportunity to substitute something there. Again, the government struggles with Hodge because it asks the court to impose an illegal sentence. If due process requires a defendant to have an opportunity in notice to challenge, that is there when he gets the pre-sentence report. Any of his convictions or her convictions can be used by a district court to meet the statutorily mandated requirement by a district court. It is not something the government – Yeah, I mean, we don't want to relitigate Hodge here, but I guess part of the rationale in Hodge is we want the government – possible prior offenses that would enhance a defendant's sentence front and center, right from the get-go. But then don't apply Hodge retroactively, Your Honor. When we presented this case to the court in 2013, we relied on the state of the law at the time. As litigants, we looked to the Fourth Circuit's guidance, and through 2013 we didn't know that this would be a requirement five years later. So give the government the opportunity to provide that notice and actually litigate it. And actually conform with the law. In this particular case, if the court finds that the Connecticut robberies qualify, all three of them, he is an ACCA. In Hodge itself, the government asked the court – if my recollection holds, I don't have it in front of me. The government asked the court to rely upon a fourth conviction, and the court there held that it would not do that. Would it make a difference since the government now is asking to – if we were to get to this issue, to vacate the sentencing and send it back for a whole new sentencing? So in other words, is it a question where Hodge, in essence, didn't ask for that remedy – the government didn't ask for the remedy of whole new sentencing. They asked the court to rely on it without that new sentencing? Or is that too thin of a reason? I'm not familiar with the nuances of what was asked. It wasn't asked in the Hodge case, and I apologize for that. No, no. But with respect to – if the concern of the court was that the district court substituted the government's request for a predicate of defense, but the defendant didn't have the opportunity to challenge, then I understand the court's concern with notice and opportunity to litigate the issue. That is resolved here if you are concerned in any shape, way, or form about notice and opportunity to be heard by sending this case back for a full resentencing where the government can notice up all of the predicate offense, including his three Connecticut robberies, and litigate that out, and then have it come back. The government believes, though, that law of the case suggests that the district court properly dismiss the 2255 on law of the case, that the defendant is an ACCA, and that the district court's decision should be affirmed. Thank you very much. Thank you. I'd like to start, Judge Richardson, especially with what you pointed out, Joint Appendix 38. I used the word reply. I think I was in an appellate mindset. It was the third filing. We moved to 2255, the government opposed, and then that third filing was where we fleshed out our arguments to a larger degree. I would submit that everything was before the district court, and the government had opportunity to respond to that, but you were exactly correct. It was that context. And I will also say, as a practical matter, when these Johnson claims were coming in, it was a triage situation where we were trying to get the motions filed by the one-year deadline. So that would explain, Your Honor, why the front end was stripped down and the back end was more. Let me just so I understand. If, and I'll just take as a hypothetical, I were to find that that issue wasn't properly presented, then I would be in a world where the firearm offense, the assault offense, qualify. They're unchallenged. And I would only then need to find one of the robbery offenses to qualify, and we would have the 2014 decision from this court. So that's why the law of the case would actually apply. If the other one falls out, then the law of the case is harder because the court only decided first degree. Exactly, Your Honor. And I will also give this court mention, does Gardner survive Stoeckling? I'll just make the panel aware if it isn't. This issue is also being argued across the hall in the gold courtroom in the Dinkins case, and they actually had supplemental briefing on that exact question. So to the extent this panel or even the full court is wondering how that's reconcilable, I just want to make sure the left hand and the right hand understood what they were doing. One of the assumptions that my colleague made when she was up here talking is she talked about how we argued the force clause in the first Bennerman appeal. And we didn't. We didn't argue the force clause. This is the first time we're arguing the force clause because this is the first time it makes sense to argue the force clause because the residual clause applied back then. Say that again. In 2014, this court resolved the issue on the force clause. Your Honor, I would not go as far as to say resolved on the force clause. We made one argument in 2014, which was that the structure of Connecticut robbery allowed someone to be effectively an accessory after the fact, so unconnected to the actions of the crime that it could not be a predicate. This court rejected that, but we did not at the time make any argument that the substantive crime, if I'm the defendant who committed it, wouldn't have counted. This court did say it involved first-degree robbery, involves the use of force. But I would submit that this court could have just as easily said falls under the residual clause, that no one disputed. And I see you have some confusion there. I mean, just as easily, but didn't. But didn't. But again, the law of the case is ultimately a doctrine meant to promote judicial efficiency, but I would say it does reach that manifest injustice standard. If this court right now, if this panel, believes that Connecticut robbery is not a predicate, but will apply it, will nonetheless refuse to reach the question, simply because another panel of this case, in a pure curiam PC, when Johnson won, wasn't argued, used the phrase force clause, when it could have just as easily used the phrase residual clause, and the parties have never had that discussion, then I would say that meets one of the exceptions to law of the case, which is ultimately the manifest injustice standard. Thank you, Mr. Brignac. Thank you, Your Honor. We'll come down and recounsel and proceed to our final case.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson